IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| J. NEIL DEMASTERS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No 7:12-cv-580 |
| ) | |
| CARILION CLINIC, et al., ) | By: Michael F. Urbanski |
| ) | United States District Judge |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter is before the court on defendants' motion to dismiss plaintiff's amended complaint (Dkt. # 23). Plaintiff alleges that he was retaliated against for actions he took in connection with another employee's workplace discrimination claims, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000. The issues have been fully briefed, and oral argument was held on July 19, 2013. Because plaintiff's allegations do not state a plausible claim that he was retaliated against for his participation in another's Title VII complaint or for his communicated, purposive opposition to workplace discrimination, defendants' motion must be **GRANTED** and the amended complaint dismissed.

**I.**

Plaintiff J. Neil DeMasters ("DeMasters") worked as an Employee Assistance Program (EAP) consultant in Carilion's[1] behavioral health unit from July 2006 until his termination in August 2011. Am. Compl., Dkt. # 21, at ¶ 11. Following his termination, DeMasters filed suit against Carilion, claiming Carilion fired him in retaliation for his involvement with John Doe, another Carilion employee who brought a Title VII claim against Carilion. Id. at ¶ 35.

---

[1] Defendants Carilion Clinic, Carilion Medical Center, and Carilion Behavioral Health, Inc. will be referred to herein collectively as "Carilion."

DeMasters first met Doe on October 17, 2008 after Doe received a referral to the Carilion EAP. Id. at ¶ 12. Doe complained to DeMasters that Doe's supervisor had been sexually harassing him for several months. Id. DeMasters told Doe that "it appeared to [DeMasters] that Doe was a victim of sexual harassment in violation of Carilion's sexual harassment policy." Id. at ¶ 13. DeMasters reviewed the steps of Carilion's sexual harassment policy with Doe and suggested a plan to report the harassment. Id. Doe signed a release giving DeMasters permission to speak directly with Carilion's human resources department. Id. DeMasters indicated his plan to contact the human resources department regarding Doe's concerns. Id. The same day, DeMasters contacted Carilion's human resources department and "relayed the substance of Doe's harassment claim." Id. at ¶ 14. Carilion's human resources representative told DeMasters that she would follow up with Joe Baer, Carilion's human resources manager, and would contact Doe. Id. In fact, Carilion's human resources department did contact Doe and took his statement. Id. at ¶ 15. Carilion promptly terminated Doe's harasser.

Doe then began to express concerns to DeMasters about retaliation by Carilion for his complaints. Id. On October 23, 2008, Doe called DeMasters to complain that although Carilion had fired the harasser, he had been allowed back into the hospital to retrieve personal belongings. Id. at ¶ 16. The next day, October 24, 2008, Doe met with DeMasters, indicating that he felt uncomfortable with his unit director "and was facing increasing hostility from coworkers who were sympathetic with or friends of the harasser." Id. at ¶ 17.

On October 27, 2008, DeMasters met with colleagues in the EAP to discuss Doe's ongoing problems. Id. at ¶ 18. During the meeting, it was agreed that DeMasters would contact Carilion's human resources department "again to offer insight as to how Carilion might intervene with the department director in an effort to stop the hostile work environment." Id. On October

2

28, 2008, human resources manager Joe Baer returned DeMasters' call, indicating that "he had already spoken with Doe, who had also reported the harassment. DeMasters also offered Baer EAP services with respect to coaching the department director as to how human resources might better respond to Doe's complaints. Instead of accepting DeMasters' offer, Baer declined and stated that he would speak with the unit director directly." Id. at ¶ 20.

On October 31, 2008, Doe expressed to DeMasters continued frustration as to Carilion's lack of response to his concerns. Doe also spoke to one of DeMasters' EAP colleagues on the same subject later that day. Id. Roughly two weeks later, Baer contacted DeMasters and said that he was working with Doe's department director regarding an appropriate response to Doe's complaints. Id. at ¶ 23. At some point during the course of their interactions, DeMasters told both Doe and Baer that Carilion was mishandling Doe's complaints. Id. at ¶ 24.

Two years passed without any further involvement by DeMasters in any of the issues concerning Doe. On December 14, 2010, a Carilion manager called DeMasters, indicating Doe had filed a complaint with the EEOC and was "pursuing a civil suit for sexual harassment against Carilion." Id. at ¶ 25. During that conversation, DeMasters acknowledged that Doe had been seen by him in the EAP two years earlier but did not reveal any of the details of the counseling he had provided. Id. at ¶ 25.

Unbeknownst to DeMasters, Doe in fact had pursued a discrimination charge with the EEOC in the intervening period. Doe received a right to sue letter and filed suit against Carilion on October 28, 2010. Id. at ¶ 26. The parties resolved Doe's Title VII claim against Carilion, and an order of dismissal was entered July 14, 2011. Id.

Shortly after the settlement of Doe's suit, on August 8, 2011, Carilion called DeMasters to a meeting with "department director Mark Derbyshire, vice president of human resources

Jeanne Armatrout, and Carilion's corporate counsel." Id. at ¶ 27. Carilion questioned DeMasters regarding his involvement with Doe in 2008. DeMasters stated that he had told Doe "that what had happened to him was sexual harassment." Id. at ¶ 28. DeMasters was questioned as to why he had not taken the "pro-employer side," id. at ¶ 28, and was told that "he had not protected Carilion's interests and that plaintiff's conduct had left Carilion 'in a compromised position.'" Id. at ¶ 29. On August 10, 2011, DeMasters received a letter "stating that plaintiff had 'fail[ed] to perform or act in a manner that is consistent with the best interests of Carilion Clinic'" and indicating his employment was terminated. Id. at ¶ 31. In a subsequent January 16, 2012 letter, department director Mark Derbyshire told DeMasters that his comments to Doe "could have reasonably led [Doe] to conclude that he should file suit against Carilion," and that DeMasters "failed to perform or act in a manner that is consistent with the best interests of Carilion." Id. at ¶ 32. Derbyshire stated that DeMasters' actions placed the entire operation at risk. Id. at ¶ 32.

Carilion argues these allegations raised in DeMasters' amended complaint are insufficient to state a plausible claim for retaliation under Title VII. The court agrees.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most

favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III.

To establish a prima facie case of retaliation under Title VII, a plaintiff must prove three elements: "(1) that [he] engaged in protected activity, (2) that an adverse employment action was taken against [him], and (3) that there was a causal link between the protected activity and the adverse employment action." Laughlin v. Metro Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998) (citing Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996)). "Protected activity under Title VII is divided into two categories, opposition and participation." Id. at 257. The statute provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). In short, "[a]n employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." Laughlin, 149 F.3d at 259. Participation includes "(1) making a charge [with the EEOC]; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." Id. (citing 42 U.S.C. § 2000e-3(a)). "Opposition

5

activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Id. (citing Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981)).

DeMasters bears the initial burden of establishing a prima facie case of retaliation. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The primary issue before the court is whether DeMasters' alleged activity meets the first element of Title VII retaliation: that DeMasters engaged in protected activity. DeMasters argues the Supreme Court has interpreted retaliation under Title VII broadly and that this court should find DeMasters' activity to be protected. Pl.'s Opp. Br., Dkt. # 27, at 7. On brief and at oral argument, DeMasters argued that his activity warrants protection under both the participation and opposition clauses. Thus, the court analyzes DeMasters' activity under each of those clauses.

### A.

DeMasters argues that participation clause protection extends to "persons who have participated in almost any manner in Title VII proceedings." Pl.'s Opp. Br., Dkt. # 27, at 18. The statute makes clear, however, that only certain activities constitute participation: making a charge; testifying; assisting; or participating in any manner in an investigation, proceeding, or hearing under Title VII. Laughlin, 149 F.3d at 259 (citing 42 U.S.C. § 2000e-3(a)). "[A]t minimum, the alleged protected activity must directly relate to the filing of an EEOC charge." Johnson v. Portfolio Recovery Assoc., LLC, 682 F. Supp. 2d 560, 582 (E.D. Va. 2009); see also Thomas v. Goodyear Tire & Rubber Co., No. Civ. A. 4:00-CV-00048, 2001 WL 34790222, at *4 (W.D. Va. June 18, 2001) (holding plaintiff failed to establish retaliation as a result of protected participation activity where plaintiff filed EEOC complaint three months after being terminated and salary inquiries did not amount to participation), aff'd, 31 F. App'x 101 (4th Cir. 2002).

Refusal to participate in an EEOC investigation against the will of an employer can also give rise to participation clause protection in certain circumstances. See, e.g., Moss v. Lear Corp, No. 2:05-CV-238PPS, 2007 WL 2901139, at *9 (N.D. Ind. Sept. 28, 2007) (citing Merkel v. Scovill Inc., 787 F.2d 174 (6th Cir 1986)).

DeMasters cites a number of cases, including Jute v. Hamilton Sundstrand Corp., 420 F.3d 166 (2d Cir. 2005), Kubicko v. Ogden Logistics Services, 181 F.3d 544 (4th Cir. 1999), and Hashimoto v. Dalton, 118 F.3d 671 (9th Cir. 1997), in support of his position that courts have protected a wide range of employee activities under the participation clause. Each of these cases, however, involves activity directly related to a Title VII action, which distinguishes them from the instant case. For example, the court in Jute found the employee-plaintiff to be entitled to participation clause protection because she voluntarily agreed to testify on behalf of a co-worker in that individual's Title VII lawsuit. Kubicko involved claimed retaliation against an employee who served as a witness in an EEOC investigation stemming from a co-worker's complaint of sexual harassment.[2] In Hashimoto, the claimed retaliation followed complaints made to an EEO counselor. As is evident, these cases do not suggest that activities unrelated to an EEOC filing or Title VII action are protected under the participation clause.

In arguing his activity is protected under the participation clause, DeMasters ignores the uncontroverted fact that he had nothing to do with Doe's EEOC complaint or Title VII lawsuit. DeMasters does not allege that he agreed to testify or serve as a witness for Doe or that he was involved in any way in Doe's EEOC complaint or subsequent lawsuit. Indeed, DeMasters did not even know Doe had filed an EEOC complaint until 2010, two years after he last communicated with Doe. Am. Comp., Dkt. # 21, at ¶¶ 23, 25. Even after learning of Doe's

---

[2] Defendants in Kubicko did not contest that plaintiff's participation in the EEOC investigation was protected activity under the participation clause. 181 F.3d at 552.

claim in 2010, DeMasters played no role in it. DeMasters' sole argument under the participation clause is that his discussions with Doe in 2008 assisted Doe's later-filed EEOC complaint and Title VII action. Because there was no ongoing Title VII investigation or proceeding at the time DeMasters was communicating with Doe, this argument fails as a matter of law.

In this regard, the Fourth Circuit's holding in Laughlin is instructive. Karen Laughlin, secretary to the Washington National Airport Manager, Augustus Melton, Jr., was terminated for removing documents from Melton's desk and sending them to Kathy LaSauce, another airport employee who had complained of retaliation. Laughlin asserted that her actions were protected activity under Title VII because she was assisting LaSauce in her retaliation investigation. 149 F.3d at 259. The Fourth Circuit disagreed, holding that at the time Laughlin removed the documents from Melton's desk, LaSauce was not involved in any ongoing investigation under Title VII. Id. LaSauce had recently resigned from her position and had not yet filed suit. Id. "There was quite simply no ongoing 'investigation, proceeding or hearing' in which Laughlin could participate at the time she discovered the documents on her boss's desk." Id.; see also id. at 256 (Laughlin removed the documents out of concern that LaSauce would not have adequate access to relevant documents "for a future lawsuit").

DeMasters' participation claim suffers from the same infirmity. DeMasters does not allege that Doe was pursuing a Title VII claim when DeMasters spoke to him in 2008. Thus, as in Laughlin, there is no allegation that DeMasters assisted Doe in an ongoing EEOC investigation, proceeding or hearing. In fact, DeMasters was not even aware that Doe had filed an EEOC charge or lodged a Title VII lawsuit until he was informed by Carilion in 2010. Not only is there no allegation of participation by DeMasters in his own Title VII claim in 2008, there is no allegation that DeMasters played any role in the filing of Doe's EEOC complaint or

Title VII lawsuit. DeMasters' activities did not include making a charge, testifying, assisting or participating in a Title VII proceeding as required by 42 U.S.C. § 2000e-3(a). The lack of temporal proximity between DeMasters' interactions with Doe and Doe's institution of a Title VII proceeding proves fatal to DeMaster's participation clause claim.

**B.**

DeMasters also contends that his conduct is protected under the opposition clause. The opposition clause "covers a broader range of employee conduct than does the more tightly circumscribed 'participation clause.'" McNair v. Computer Data Sys., Inc. 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. 1999) (unpublished table decision) (citing Laughlin, 149 F.3d at 259 and Armstrong v. Index Journal Co., 647 F.2d 441, 448-49 (4th Cir. 1981)). "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim." Laughlin, 149 F.3d at 259. Using informal grievance procedures and informal protests, as well as voicing complaints in order to bring attention to an employer's discriminatory activities, are all protected opposition activities. Id.

"The opposition clause, by its very terms, requires that the employees at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices that employees simply think are unfair." McNair v. Computer Data Sys., Inc. 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. 1999) (unpublished table decision); see also Curry v. BlueCross BlueShield, No. 3:09-CV-2718, 2010 WL 6182356, at *6 (D.S.C. Oct. 14, 2010) ("To establish that she engaged in protected [opposition] activity, a plaintiff must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring . . . ."), adopted by 2011 WL 93199 (D.S.C. Mar. 16, 2011), appeal dismissed, 440 F. App'x 181 (4th

Cir. 2011), cert. denied, 132 S. Ct. 1934 (2012). "General complaints about a supervisor's conduct, unrelated to discrimination, are not properly considered opposition activity." Harris-Rogers v. Ferguson Enter., No. 5:09-CV- 78-JG, 2011 WL 4460574, at *7 (E.D.N.C. Sept. 26, 2011) (citing Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011), Laughlin, 149 F.3d at 260, and McCallum v. Billy Graham Evangelistic Ass'n, 3:09CV381-RLV, 2011 WL 3438756, at *8 (W.D.N.C. Aug. 5, 2011)). Typically, the Fourth Circuit has "found informal complaints to be protected when they are made by the employee to the employer." Pitrolo v. Cnty. of Buncombe, NC, No. 07-2145, 2009 WL 1010634, at *3 (4th Cir. Mar. 11, 2009) (citing Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543-44 (4th Cir. 2003) and Armstrong, 647 F.2d at 448-49). In determining whether an employee has engaged in legitimate opposition activity, the Fourth Circuit employs a balancing test, requiring courts to "'balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'" Armstrong, 647 F.2d at 448 (quoting Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 231 (1st Cir. 1976)).

Applying the Fourth Circuit standard, the first question to be answered is whether DeMasters' actions can be considered oppositional to an unlawful employment practice by Carilion. DeMasters' alleged involvement in Doe's complaints of discrimination consists of (1) his conversations with Doe and (2) his communications with Carilion management.

### 1.

In the first instance, DeMasters' conversations with Doe are not oppositional. DeMasters alleges that he told Doe that Doe was a victim of sexual harassment and that Carilion had mishandled Doe's complaints. Am. Compl., Dkt. # 21, at ¶¶ 13, 24. These statements were not

made to Carilion, but rather were part of the counseling DeMasters provided to Doe under the EAP. Statements made by DeMasters to Doe solely within the confines of the EAP process cannot qualify as oppositional conduct.

The Fourth Circuit addressed a similar circumstance in Pitrolo v. County of Buncombe.[3] In that case, Melanie Pitrolo, a candidate for the position of Interim Director with the Western North Carolina Air Quality Agency, told her father that the retiring director, Bob Camby, had advised her that there was opposition to hiring her because of her gender and young age. Pitrolo's father complained of the discrimination, and the agency's governing board learned of his complaints. After Pitrolo was not selected for the position, she brought suit for gender discrimination and retaliation. With respect to her retaliation claim, the Fourth Circuit affirmed the district court's conclusion that Pitrolo's statements to her father were not protected oppositional conduct, as follows:

> In light of [Fourth Circuit] precedent, we find that Pitrolo's statements to her father do not qualify as protected activity under § 2000e-3(a). There is no evidence that Pitrolo intended for her father to pass along her complaints to Defendants. J.A. 238. Pitrolo did not communicate her belief to her employer and was not attempting to bring attention to the alleged discriminatory conduct. Instead, Pitrolo told her father of Camby's statements because she was "close to [her] father" and "it was something that was very important that was going on in [her] life at the time." J.A. 238. As noted by the district court, it would not be reasonable to "characterize a private complaint to a close family member as an 'informal grievance procedure' under Laughlin." J.A. 527. Since Pitrolo's statement to her father was not protected activity, her retaliation claim fails.

2009 WL 1010634, at *3. For the same reasons, DeMasters' statements to Doe, made in the privacy of an EAP counseling session, are not protected oppositional activity. DeMasters did not make these statements to his employer, Carilion. There is no suggestion that DeMasters intended

---

[3] Although unpublished, this opinion has precedential value in relation to a material issue in this case and there is no published opinion that would serve as well. See Fourth Circuit Local Rule 32.1.

for Doe to pass his comments on to Carilion. DeMasters did not communicate his views to Carilion in an effort to bring attention to the alleged discriminatory conduct. As in Pitrolo, this does not qualify as protected oppositional activity.

The Supreme Court's decision in Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee, 555 U.S. 271 (2009), does not change the calculus. As the Fourth Circuit in Pitrolo reasoned:

> In Crawford, the Supreme Court held that the opposition clause extends to employees who involuntarily testify in an internal investigation of alleged sexual harassment. The Court pointed to an EEOC guideline explaining that "'[when] an employee communicates *to her employer* a belief that her employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's opposition to the activity.'" Crawford, 129 S.Ct. at 851 (citing 2 EEOC Compliance Manual §§ 8-II-B(1), (2), p. 614:0003 (Mar. 2003)) (emphasis added). As Justice Alito noted, Crawford does not extend to cases where employees do not communicate their views to their employers through purposive conduct. Crawford, 129 S. Ct. at 855 (Alito, J., concurring).

2009 WL 1010634, at *3 n.6. DeMasters' private communications to Doe in the context of EAP counseling were not purposive communications to DeMasters' employer.[4] As such, these private communications do not constitute protected oppositional conduct.

The district court's opinion in Harris-Rogers v. Ferguson Enterprises also bears on this issue. In that case, plaintiff Windy Harris-Rogers claimed retaliation for an email she sent encouraging a fellow employee, Krystal Stinson, to contact the human relations department concerning badgering by a supervisor. Instead of sending the email just to Stinson as she intended, however, Harris-Rogers mistakenly sent her email to a mass distribution list. Following Pitrolo, the court concluded that the mistaken mass email did not qualify as protected

---

[4] Nor were the communications made by DeMasters to his EAP colleagues, as alleged in paragraph 18 of the amended complaint. See 42 U.S.C. § 2000e(b) (defining "employer").

12

opposition activity as it was intended only for the co-employee and was not sent to voice opposition or bring attention to the employer's discriminatory activities. 2011 WL 4460574, at *7. Likewise, DeMasters' communications to Doe were intended only for Doe and were not an attempt to bring attention to Carilion's discriminatory activities.

## 2.

Nor do DeMasters' statements to Carilion's human relations department qualify as protected oppositional conduct. There are no allegations in this case that DeMasters played any role in Doe's sexual harassment complaint beyond counseling Doe through the EAP and relaying Doe's complaint to Carilion's human relations department. Merely ferrying Doe's allegations to Carilion's human relations department is in no sense oppositional, and DeMasters did not engage in protected activity in so doing. Rice v. Spinx Co., Inc., No. 6:10-01622-JMC, 2012 WL 684019 (D.S.C. Mar. 2, 2012) (acting within scope of employment by passing along a sexual harassment complaint to employer's human resources department is not protected activity); see Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir. 2004) ("To engage in protected activity, 'the employee must step outside his or her role of representing the company . . . .'" (quoting McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (10th Cir. 1996))); McKenzie, 94 F.3d at 1487 (an employee who, in her capacity as personnel director, informed the company of possible FLSA violations, did not engage in activity protected under FLSA's anti-retaliation provision, as it was consistent with her job duties to evaluate wage and hour issues and assist the company in complying with its obligations under the FLSA); see also Hagan v. Echostar Satellite, LLC, 529 F.3d 617, 628 (5th Cir. 2008) (agreeing with McKenzie that "an employee must do something outside of his or her job role in order to signal to the employer that he or she is engaging [in] protected activity"). It is of no moment that the scope of DeMasters'

13

EAP job duties has not been clearly defined at this stage of litigation. Indeed, it is apparent from the face of the amended complaint that DeMasters intended only to relay Doe's complaints to Carilion, not voice his own opposition to any unlawful employment practice, such as the sexual harassment or hostile work environment alleged by Doe. DeMasters specifically asserts that Doe signed a release "to permit plaintiff to speak directly with Carilion's human resources department so that plaintiff could advance a complaint *on Doe's behalf* and communicate directly with Carilion concerning the matter." Am. Compl., Dkt. # 21, at ¶ 13 (emphasis added).

At some point, DeMasters voiced criticism to Carilion about the manner in which it was responding to Doe's complaints. There is a fundamental difference, however, between voicing criticism of Carilion's investigation and handling of Doe's complaint, which DeMasters alleges, and championing Does' substantive discrimination charges to Carilion's management, which is not alleged. DeMasters' criticisms of Carilion's investigative process is not oppositional activity subject to Title VII protection.

In this regard, the Eleventh's Circuit's opinion in Brush v. Sears Holding Corporation, 466 F. App'x 781 (11th Cir. 2012), cert. denied, 133 S. Ct. 981 (2013), is instructive. The plaintiff in Brush was a loss prevention officer tasked with conducting an internal investigation of alleged sexual harassment in the workplace. In September, 2007, Jane Doe, a Sears employee, contacted Brush, complaining that another employee had sexually assaulted her. Brush notified Sears of the allegations, and Sears suspended the alleged harasser. Brush continued to meet with Doe and was told by Doe that she had been raped by the suspended Sears employee; Doe asked, however, asked that neither her husband nor the police be informed of the alleged rape. Brush notified other Sears employees of the alleged rape and pushed Sears to disclose the allegations to the police. Sears declined, citing the investigation's incomplete status and Doe's desire not to

14

involve law enforcement. Even after Sears fired the alleged rapist, Brush continued to push for the reporting of the alleged rape. Brush was terminated in November, 2007. A week after her firing, Brush filed a claim with the EEOC and was issued a right to sue letter. Two years later, Brush filed a retaliation suit under Title VII.

The Eleventh Circuit concluded that Brush did not engage in any protected oppositional conduct, reasoning that "Brush's disagreement with the way in which Sears conducted its internal investigation into Mrs. Doe's allegations does not constitute protected activity. As required by the explicit language of 42 U.S.C. § 2000e-3(a), to qualify as 'protected activity,' a plaintiff's opposition must be to a 'practice made unlawful by [Title VII.]'" 466 F. App'x at 786. Indeed, the court held:

> Brush's job responsibilities involved exactly the type of actions that Brush took on Mrs. Doe's behalf. There is simply no evidence in the record that Brush was asserting any rights under Title VII or that she took any action adverse to the company during the investigation. Disagreement with internal procedures does not equate with "protected activity" opposing discriminatory practices.

Id. at 787 (internal citation omitted).

Consistent with Brush, DeMasters' statements to Carilion that Carilion was mishandling Doe's complaints are not protected oppositional conduct. DeMasters' complaints about the manner in which Carilion handled Doe's investigation do not concern a practice made unlawful under Title VII. Because DeMasters' criticism was directed to Carilion's processing of Doe's complaints, rather than the substance of those complaints, it is not actionable oppositional conduct. As a result, DeMasters' allegations do not state a claim for retaliation under the opposition clause.[5]

---

[5] In his brief, DeMasters asks the court to infer from the manner in which DeMasters was terminated that Carilion must have interpreted DeMasters' conduct as being oppositional or participatory. See Pl.'s Opp. Br., Dkt. # 27, at

## C.

The additional cases relied upon by DeMasters do not suggest a contrary result. First, as noted previously, Crawford does not bear on the facts of this case because, unlike in this case, Crawford involved an employee who directly communicated to her employer her experiences with sexual harassment in the workplace. 555 U.S. at 274. The issue in Crawford was whether the opposition clause extended to situations where an employee spoke out about sexual harassment to her employer in response to inquiries from the employer, as opposed to making such complaints on her own initiative. Crawford simply does not extend protection under the opposition clause to the situation presented here where DeMasters did not complain himself of workplace discrimination or other unlawful employment practices.[6] See Pitrolo, 2009 WL 1010634, at *3 n.6 ("Crawford does not extend to cases where employees do not communicate their views to their employers through purposive conduct.").

Nor does DeMasters' reliance on the Supreme Court's opinion in Thompson v. North American Stainless, LP, 131 S. Ct. 863 (2011), alter the court's conclusion. In Thompson, the Court was "required to assume that [the employer] fired Thompson in order to retaliate against [Thompson's fiancée] for filing a charge of discrimination." Id. at 867. The Court held that Title VII's anti-retaliation provision applied to Thompson, concluding that "[h]urting him was the unlawful act by which the employer punished her," id. at 870, placing him within the zone of interests protected by Title VII. Id. Nothing of the sort happened in this case. There is no suggestion that DeMasters was terminated to punish Doe, as the two bore no relationship other than by virtue of their communications through the EAP two years earlier.

---

12-13, 18, 21. But it is DeMasters' burden to allege that he engaged in protected activity in order to state a prima facie claim for retaliation under Title VII. That he has failed to do.

[6] As noted previously, DeMasters' call to Carilion's human relations department merely relaying Doe's complaint in his role as EAP consultant does not qualify as oppositional conduct.

16

Finally, DeMasters argues that the Seventh Circuit's decision in McDonnell v. Cisneros, 84 F.3d 256 (7th Cir. 1996), compels the conclusion that he has stated an opposition claim. In McDonnell, two Chicago Department of Housing and Urban Development (HUD) employees, Mary McDonnell and Thomas Boockmeier, were anonymously accused of sexual misconduct at work. HUD retained investigators from the Department of Defense to investigate the anonymous allegations. McDonnell and Boockmeier complained about the manner in which the issue was investigated and ultimately brought a Title VII suit, alleging that their complaints about the investigation resulted in McDonnell being ostracized, disdained and ridiculed by management and Boockmeier being reassigned. The Seventh Circuit concluded that there was no causal connection between McDonnell's filing of the complaints and the alleged retaliation against her. Id. at 259.

DeMasters relies on the portion of the Seventh Circuit's opinion holding that Boockmeier had sufficiently stated a claim for retaliation under Title VII. The Seventh Circuit held that Boockmeier, McDonnell's direct superior, engaged in passive oppositional conduct, consisting "of failing to carry out his employer's desire that he prevent his subordinates from filing discrimination complaints." Id. at 262. Unlike in McDonnell, however, DeMasters was not Doe's superior and had no ability to control Doe's actions. As such, the concern identified by the court in McDonnell— i.e., "that employers could obtain immunity from the retaliation statute by directing their subordinates to take steps to prevent other workers (as by threat of dismissal or other discipline) from complaining about discrimination," id. at 262— is simply not present in this case. In contrast to the situation in McDonnell, DeMasters played no role whatsoever in Doe's EEOC charge or Title VII lawsuit, and any private statements he made to Doe in the context of EAP counseling do not constitute protected oppositional conduct.

17

Indeed, there is no allegation of any contact between Doe and DeMasters between the EAP sessions in 2008 and Doe's pursuit of a Title VII claim in 2010. In McDonnell, Boockmeier alleged retaliation for failing to keep McDonnell from filing an EEOC charge based on conduct involving both McDonnell and Boockmeier. Here, in stark contrast, DeMasters had no role whatsoever in Doe's filing of an EEOC charge some two years after DeMasters provided EAP counseling. The retaliation claim is simply far too attenuated in this case to constitute oppositional activity protected under Title VII.

**IV.**

In sum, DeMasters fails to raise plausible allegations that he engaged in protected activity under the participation or opposition clause of 42 U.S.C. § 2000e-3(a). As a result, DeMasters has failed to allege a prima facie case of retaliation, and Carilion's motion to dismiss under rule Federal Rule of Civil Procedure 12(b)(6) must be **GRANTED**. DeMasters has already had an opportunity to amend his complaint, and the court believes that further amendment would be futile. DeMasters' claim will be dismissed with prejudice.

An appropriate Order will be entered.

Entered: September 17, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge